**IN THE UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**



CATHRYN STOUT AND
RAYMOND MONTGOMERY, JR.                                    **PLAINTIFFS**

V.                                                        CIVIL ACTION No.:

ALBERT SANTA CRUZ, COMMISSIONER          3:13cv780 WHB-RHW
OF THE MISSISSIPPI DEPARTMENT OF
PUBLIC SAFETY, in his official capacity;
STAFF SERGEANT BRAD VINCENT, DIRECTOR OF
CRIMINAL INTERDICTION/ K-9 OPERATIONS in his official
and individual capacities; UNIDENTIFIED TROOPER # 1,
in his official and individual capacities; UNIDENTIFIED
TROOPER # 2, in his official and individual capacities          **DEFENDANTS**


### COMPLAINT

Jury Trial Demanded

### INTRODUCTION

1. This is an action to demand declaratory and injunctive relief and to recover damages to

   vindicate the civil rights of Cathryn Scott Stout and Raymond Eugene Montgomery, Jr.

   While Plaintiffs were visiting Mississippi for Ms. Stout to work on her academic research

   examining Mississippians' efforts to change negative stereotypes of their state; they were

   the victims of racial profiling by the Mississippi Department of Public Safety.  Plaintiffs

   allege that Defendant Unknown Trooper #1 pulled them over illegally for a spurious tag

   violation after the trooper observed that they are black. The troopers held them for over an

   hour while they illegally searched the car, riffled through their suitcase and dismantled the

   interior door panels of their car.  Ms. Stout attempted to video tape the officers to protect

   herself and document the troopers' behavior, but was prohibited from engaging in this basic

   First Amendment right. After the troopers' fruitless search, Defendants sent Plaintiffs on

1

their way, with no ticket issued.  As outlined below, Ms. Stout and Mr. Montgomery bring this action to recover damages as well as declaratory and injunctive relief against the Department of Public Safety and the participating troopers for these egregious constitutional violations.

## JURISDICTION AND VENUE

2. Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1964; 42 U.S.C. § 2000d; 49 U.S.C. § 40127(a); the First, Fourth, and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983 and *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); This Court has jurisdiction over Plaintiffs' claims as an action arising under federal law, 28 U.S.C. § 1331; as a suit to redress deprivations of rights, privileges, and immunities secured by the United States Constitution and by federal law, 28 U.S.C. § 1343(3), (4).

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district.  The events complained of herein happened as Ms. Stout was driving through, stopped, and had her vehicle searched on the side of Interstate 55 approximately ten to fifteen miles north of Jackson, Mississippi, within the Southern District of Mississippi.

## PARTIES

4. The Plaintiff, Cathryn Scott Stout, is an adult resident of Shelby County, Tennessee, residing at 3467 Hillridge Street, Memphis, Tennessee 38109.

5. The Plaintiff, Raymond Montgomery, Jr., is an adult resident of Shelby County, Tennessee residing at 18 N. Second Street, Apt. 103, Memphis, Tennessee 38103.

6. The Defendant Commissioner Albert Santa Cruz is the Commissioner of the Mississippi Department of Public Safety (hereinafter "MDPS") and is responsible for the Mississippi

Highway Patrol and for the actions of its officers acting under the color of the law and is sued in his official capacity.  Defendant Santa Cruz may be served with process via the Attorney General of the State of Mississippi at the Walter Sillers Building, 550 High Street, Suite 1200, Jackson, MS 39201.

7.   The Defendant Staff Sergeant Brad Vincent, an adult resident of Mississippi, is the Director of Criminal Interdiction/K-9 Operations with the Mississippi Highway Patrol. He is sued in his official and individual capacities.  Defendant Staff Sergeant Vincent may be served with process in his individual capacity at the Mississippi Highway Patrol Office Troop C, 3851 Hwy 468 W, Pearl, MS 39208, and in his official capacity via the Attorney General of the State of Mississippi at the Walter Sillers Building, 550 High Street, Suite 1200, Jackson, MS 39201.

8.   Defendant Unidentified Trooper #1, an adult resident of Mississippi, is a Trooper with the Mississippi Highway Patrol, and is sued in his official and individual capacities. Defendant Unidentified Trooper #1 may be served with process in his individual capacity at the Mississippi Highway Patrol Office Troop C, 3851 Hwy 468 W, Pearl, MS 39208, and in his official capacity via the Attorney General of the State of Mississippi at the Walter Sillers Building, 550 High Street, Suite 1200, Jackson, MS 39201.

9.   Defendant Unidentified Trooper #2, an adult resident of Mississippi, is a Trooper with the Mississippi Highway Patrol, and is sued in his official and individual capacities. Defendant Unidentified Trooper #2 may be served with process in his individual capacity at the Mississippi Highway Patrol Office Troop C, 3851 Hwy 468 W, Pearl, MS 39208, and in his official capacity via the Attorney General of the State of Mississippi at the Walter Sillers Building, 550 High Street, Suite 1200, Jackson, MS 39201.

## STATEMENT OF FACTS

10. Plaintiff Cathryn Stout is a doctoral student in American Studies at Saint Louis University in Missouri and is completing her dissertation while living in Memphis, Tennessee.  Ms. Stout publishes her research and presents her research at conferences.  At the time of the incident in question, Ms. Stout traveled to Mississippi occasionally in order to conduct academic research examining Mississippians' efforts to change negative stereotypes of their state.  Her need to interview people in the Jackson, Mississippi, area continues to the present; however, she has not felt safe traveling to this area since the date of this event.

11. On August 8, 2012, Ms. Stout and Raymond Eugene Montgomery, Jr., were traveling southbound on Interstate 55 through central Mississippi.  They were taking a trip through Mississippi in order for Ms. Stout to conduct academic research.  Mr. Montgomery was driving Ms. Stout's black Lexus sports utility vehicle with a Tennessee tag framed by a standard-size tag holder bearing the logo and colors of Alpha Kappa Alpha Sorority, Inc., (AKA) an African-American sorority.  Both Ms. Stout and Mr. Montgomery are African-American.

12. When Ms. Stout and Mr. Montgomery were approximately ten to fifteen miles north of Jackson, Mr. Montgomery noticed Mississippi Highway Patrol cars parked in the interstate median.  Shortly after passing the patrol cars, Plaintiffs noticed Unidentified Trooper #1 drive in the left lane alongside their SUV and look over at them and into the vehicle.  The trooper briefly passed the SUV in the left lane and then dropped back into the right lane directly behind the SUV.  He turned on his lights and flashed his siren, prompting Mr. Montgomery to pull over onto the interstate shoulder.  Mr. Montgomery

immediately began to feel suspicious of the Trooper's actions. He knew he was not violating any traffic law; in fact, he was using cruise control to insure he was driving within the speed limit. Plaintiffs allege that Unidentified Trooper #1 stopped them only after he determined that they were African-American.

13. When Unidentified Trooper #1 arrived at Mr. Montgomery's window, he asked Mr. Montgomery to get out so that he could "show him something." Unidentified Trooper #1 pointed to the tag holder on the car and told Mr. Montgomery that he had pulled him over because Ms. Stout's tag holder partially obscured the tag. He said that the Highway Patrol was trying to "crack down" on individuals with such tag holders. The trooper stated, however, that he would not issue Plaintiffs a ticket for the alleged infraction "this time."

14. The AKA tag holder did not violate Mississippi law. EXHIBIT "A"

15. After discussing the tag holder, Unidentified Trooper #1 asked Mr. Montgomery for his license. He also asked Mr. Montgomery if he could search the vehicle. Mr. Montgomery refused, stating that a search would be unnecessary. After Mr. Montgomery refused to permit a search, Unidentified Trooper #1 called Defendant Staff Sergeant Vincent.

16. Unidentified Trooper #1 exceeded the scope of the stop when he interrogated Plaintiffs and asked to search their car.

17. While Mr. Montgomery waited outside with Unidentified Trooper #1, Staff Sergeant Vincent arrived on the scene. He approached the SUV's passenger window and began to question Ms. Stout about her intended destination, including her purpose for traveling through Mississippi, lodging arrangements, and duration of stay in the state. Ms. Stout informed the trooper that she was a doctoral student at Saint Louis University and that

she was conducting academic research in Mississippi.  She also gave the trooper the name of her hotel, as well as the number of days that she and Mr. Montgomery would be in the state.

18. Moments later, Mr. Montgomery returned to Ms. Stout's vehicle without his license, and informed Ms. Stout that Unidentified Trooper #1 stated that he pulled the car over because of a suspected tag violation caused by her AKA tag holder.  He said that Unidentified Trooper #1 informed him that the Mississippi Highway Patrol was trying to "crack down" on drivers with tag holders.  He said that the officer said that he would not be issuing a ticket, so Mr. Montgomery thought they would be able to leave as soon as Unidentified Trooper #1 returned with his license.

19. At this point, Staff Sergeant Brad Vincent returned to the car and informed Ms. Stout and Mr. Montgomery that he had been called by the Unidentified Trooper #1, who felt that they were upset.   Mr. Montgomery asked Staff Sergeant Vincent why they could not leave.  He explained that Ms. Stout and he had been stopped for a long time and needed to get to their destination.  Mr. Montgomery told Staff Sergeant Vincent that Unidentified Trooper #1 informed him that he was stopped as part of a MDPS program to stop cars for suspected tag violations and that he or Ms. Stout would need to "take care of the problem."  Staff Sergeant Vincent confirmed that this was the reason for the stop, demonstrating that he understood a larger-scale policy and that he not only failed to stop Unidentified Trooper #1 from engaging in unconstitutional behavior, but also that he participated in it.

20. Staff Sergeant Vincent then informed Ms. Stout and Mr. Montgomery that troopers can run the licenses of all individuals in a car to check their criminal histories and ensure they are not wanted for arrest.

21. Staff Sergeant Vincent told the Plaintiffs that not all departments stop people for infractions such as tag holders and turn signals, but that MDPS does.  He made it clear that MDPS uses stops for minor infractions, and in the case of the tag holder, stops for non-criminal behavior as a pretext to stop cars without reasonable suspicion or probable cause that a crime has been committed for criminal investigations.  He told them, "The more people we contact, the more people we check out, the more likely we are to catch somebody up to no good."

22. Even after Unidentified Trooper #1 stated he would not issue a ticket to Mr. Montgomery for the alleged tag infraction—the only reason for the stop—Staff Sergeant Vincent continued to detain and interrogate the Plaintiffs, in violation of their Fourth Amendment rights.  He asked Mr. Montgomery and Ms. Stout a series of questions about their purposes for traveling through Mississippi and about the duration of their trip.  This was the second time he questioned Ms. Stout.  He asked if any individual asked them to "transport anything" for them and asked if everything in the vehicle belonged to them and if they were carrying weapons.  Ms. Stout then became very suspicious that Defendants had profiled her and Mr. Montgomery on the basis of their race.

23. Staff Sergeant Vincent asked again if the troopers could search Ms. Stout's vehicle.  After Plaintiffs refused, Staff Sergeant Vincent asked Mr. Montgomery to turn off the car and asked both Plaintiffs to exit the vehicle.  He informed them that he would call

someone to bring a canine officer to sniff around the vehicle; if the dog did not alert, they would be free to go, but if he did, they would search the vehicle.

24. At this point, Mr. Montgomery and Ms. Stout were confused and upset, but, believing they had no choice, they complied with the trooper's order to leave the car.  At that time, they were required to separate and Mr. Montgomery was escorted to the back of the vehicle, and Ms. Stout to the front.  Ms. Stout was then left alone, safely away from the highway and away from her car.

25. After several minutes, a third trooper, Defendant Unidentified Trooper #2, arrived at the scene with a canine.

26. Plaintiffs made several requests to depart and Defendant troopers informed them that they could not.  Plaintiffs felt they were required to do as the troopers demanded.

27. Ms. Stout recorded the beginning of the canine inspection on her phone's video camera as she was standing alone, safely, in front of her vehicle, where a trooper had led her. She intended to use the footage to protect herself, and hopes to include it as part of her academic research concerning negative stereotypes in Mississippi.  She stayed in the location to which the trooper had escorted her, eight to ten feet away from the vehicle, and held her smartphone in a purple case at waist level.  She recorded the search until Unidentified Trooper #2 demanded that she put her camera away.  This demand violated Ms. Stout's First Amendment right to record the actions of law enforcement officers while acting in the scope of their duties and to take such a recording in furtherance of academic research she intended to present to the public.  Ms. Stout's videotaped evidence does not show the dog barking or making any other signals to the troopers.

28. According to Staff Sergeant Vincent, the canine officer (which he called a "passive alert dog") picked up a "suspicious" scent from inside the vehicle.

29. After the dog allegedly alerted the troopers to a suspicious smell, the troopers began searching Ms. Stout's vehicle.  Ms. Stout and Mr. Montgomery stood in the summer heat as the two troopers rummaged through Ms. Stout's luggage, her purse, and all of the vehicle's compartments.  The search through Ms. Stout's personal items out in the open was embarrassing and humiliating, causing her significant anguish.  Then, the troopers searched under the vehicle's hood, around the tires, and behind the bumper.  Finally, the troopers took a wrench and a crowbar and began disassembling the panels in the sides of the vehicle.  After an approximately hour-long stop, the troopers advised Mr. Montgomery and Ms. Stout that they were free to go, and issued neither a ticket nor an apology.

30. At least three troopers, one of them with a canine, and at least three patrol vehicles were involved in the stop and search.  All three of the troopers were Caucasian males, and to the best of Plaintiffs' knowledge, all came from Troop C Criminal Interdiction/K-9 Operations Division of the Mississippi Highway Patrol based in Pearl, Mississippi.

31. Before Plaintiffs drove away, Ms. Stout informed Defendant Staff Sergeant Vincent that she wished to file a complaint with the Mississippi Highway Patrol regarding the troopers' behavior that day.  Staff Sergeant Vincent provided her with his card, and wrote directions for filing a complaint on the reverse.  Staff Sergeant Vincent did not tell Ms. Stout that because Defendant Unidentified Trooper #1, Defendant Unidentified Trooper #2, and he did not complete an incident report, Defendant MDPS would not review a complaint concerning the incident.

9

32. On the following day, August 9, 2012, Ms. Stout went to the Troop C office on Highway 468 in Pearl to obtain an incident report of her stop and to file a complaint against the three troopers involved.  A trooper and administrative assistant both informed Ms. Stout that pursuant to MDPS policy, no incident report had been filed documenting the extensive search, multiple responding officers, and use of a canine, as there was no arrest made.  The trooper and administrative assistant told Ms. Stout that pursuant to MDPS policy, she would not be able to file a complaint because an incident report did not exist.

33. The ACLU of Mississippi requested a copy of the incident report related to this extensive stop and search under the Mississippi Public Records Act, Miss. Code Ann. § 25-61-1 et seq.  The Mississippi Highway Patrol responded that it did not have an incident report from the stop and confirmed that Sergeant had not prepared an incident report because there were no arrests made.

34. MDPS's policies to prohibit civilians from filing complaints about troopers when no incident report has been filed, and their policy of not preparing incident reports, even where there is significant interaction, unless an arrest has been made, demonstrate deliberate indifference to the commission of constitutional violations by its troopers and to their obligation to train, supervise, and discipline troopers.

35. Both Plaintiffs have had to seek counseling to cope with the emotional toll of the stop.  As soon as Plaintiffs arrived at their hotel room in Jackson after the stop, Ms. Stout cried.  Upon returning to Memphis, she suffered ongoing emotional and physical distress from the event, including sleeplessness, crying, and lack of focus, prohibiting her from meeting academic deadlines.  She eventually sought the care of a licensed therapist.  While Mr. Montgomery did not seek treatment immediately after arriving back in Memphis, he

found himself gradually becoming depressed as a result of the stop, and now sees a therapist as well.

36. Defendants' actions have also impeded Plaintiff Stout's academic pursuits. Because Plaintiffs went to the Troop C Headquarters in Pearl in an unsuccessful attempt to file a complaint against Defendants, Ms. Stout had to cancel an interview she had planned to conduct that morning in Jackson for her research. As a trained oral historian, Ms. Stout finds that face-to-face interviews are an irreplaceable source for her research. In addition, the heavy emotional toll caused by the stop prevented her from focusing on her research until she sought the assistance of a licensed therapist. Finally, Ms. Stout has not visited the central region of the state Mississippi since the stop, due to emotional wounds and fear of a similar incident, even though such a trip would benefit her academic research.

37. The troopers' only reason for stopping the vehicle was the tag holder. A partially or completely obscured county name on a license plate alone does not violate Mississippi law; therefore, Defendants' stop of Ms. Stout's vehicle was not based on reasonable suspicion that a crime or traffic violation had been committed and, therefore, was unconstitutional.

38. MDPS policy of stopping cars based on a partially obscured county name on a plate violated Plaintiffs' Fourth Amendment rights by its policy and practice of stopping on such a basis. The policy also violates the Fourth Amendment rights of all other motorists stopped pursuant to this unconstitutional policy.

39. Unidentified Trooper #1 engaged the initial stop and interrogation pursuant to this unconstitutional policy. Staff Sergeant Brad Vincent, acting in a supervisory capacity, not only failed to stop this unconstitutional action, but he also affirmed and participated in it.

40. Staff Sergeant Brad Vincent's subsequent interrogation and search of the car exceeded the scope of the stop and was without probable cause.

41. MDPS and Mississippi Highway Patrol officers, including Unidentified Trooper #1 and Staff Sergeant Brad Vincent, have a policy and practice of using unconstitutional stops as a pretext to stop vehicles based on a profile that includes the race and or national origin of the car's passengers.

42. On August 7, 2012, the day before the Plaintiffs were stopped by MDPS, the City of Mount Bayou, Mississippi, approved a resolution against racial profiling. The resolution was in response to allegations from residents that they were being harassed and victimized by MDPS. The *Jackson Advocate* reported that in supporting the resolution, Mound Bayou Alderwoman Lillie Clifton "pointed specifically to pretextual traffic stops, patrolling and profiling city streets and harassing visitors after major events." Exhibit "B"

43. Two weeks after the Plaintiffs were stopped, Staff Sergeant Vincent, representing the Department of Public Safety, testified at an immigration hearing held by Representative Andy Gipson at the State Capitol. He made broad sweeping statements about immigrants and how they could be identified. He said that troopers are constantly on the lookout for telltale signs of foreign drug mules, making it clear they stop vehicles based on their profile of the race and kind of car driven by so-called Mexican drug mules. Exhibit "C"

44. The joint actions of the Defendant Troopers' intentional, wanton, and malicious stopping, holding, and searching Plaintiff Ms. Stout's vehicle violated Plaintiffs' Fourth Amendment rights.

45. The joint actions of the Defendant Troopers' willful, wanton and malicious stopping, detaining, and searching Plaintiff Ms. Stout's vehicle based on a racial profile violated Plaintiffs' Fourteenth and Fourth Amendment rights.

46. The joint actions of the Defendant Troopers' willful, wanton, and malicious stopping, and detaining Plaintiffs without reasonable suspicion and searching the car without probable cause violated Plaintiffs' Fourth and Fourteenth Amendment rights.

47. Unidentified Trooper #2's willful, wanton, and malicious demand that Plaintiff Stout stop recording him violated the Plaintiff Stout's First Amendment rights.

48. MDPS has an aggressive policy to stop motor vehicles, but, with deliberate indifference, they have failed to properly train, supervise and discipline Troopers with respect to constitutional standards and limitations in conducting stops, detentions, and searches, pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution. The risks of unconstitutional conduct by Troopers in these police practices is substantial, and the failure to properly train and supervise and discipline have caused the violations that have been suffered by Plaintiffs.

49. In fact, Staff Sergeant Vincent (then Trooper Vincent) was the arresting officer in *Couldery v. State*, in which the Mississippi Court of Appeals overturned the Defendant's conviction on the basis that Trooper Vincent illegally stopped him. *Couldery v. State*, No. 2003KA-0049-COA at ¶ 25 (Miss. Ct. App. 2004). The court added that even if the

initial stop had been valid, Trooper Vincent searched the criminal Defendant's car without probable cause. *Id.* at ¶ 23. Trooper Vincent has since been promoted.

50. MDPS has, with deliberate indifference, failed to properly train, supervise, and discipline Troopers with respect to constitutional standards and limitations in protected activity such as documenting the actions of officers engaged in their official duties under the First Amendment. The risks of unconstitutional conduct by Troopers in these police practices is substantial, and the failure to properly train and supervise and discipline have caused the violations that have been suffered by Plaintiffs.

## CAUSES OF ACTION

### Count One

### Cause of Action Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violations of the Fourth Amendment and Fourteenth Amendment to the United States Constitution

51. Plaintiffs incorporate by reference paragraphs 1-49 of the Complaint.

52. Defendants have implemented and enforced a policy, practice, and/or custom of stopping motor vehicles without probable cause or reasonable suspicion of criminal conduct or motor vehicle violations, detaining motorists for an unreasonable length of time without probable cause or reasonable suspicion of criminal activity, and searching motorists' vehicles without probable cause of criminal activity as required by the Fourth Amendment.

53. Defendants stopped and detained Plaintiffs without probable cause or reasonable suspicion. Defendants also searched Plaintiffs' car and belongings without probable

cause or consent.  Defendants based their stop, detention, and search of Plaintiffs on the impermissible factor of race.

54. As a direct and proximate result of such acts, Defendants have deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, in violation of 42 U.S.C. §1983.

55. As a direct and proximate result of those constitutional abuses, Plaintiffs have suffered humiliation, physical and emotional pain and suffering, loss of liberty, loss of livelihood, and violations of their civil rights.

56. The constitutional violations suffered by Plaintiffs are directly and proximately caused by the policies, practices, customs, and/or omissions implemented and enforced by Defendant MDPS Commissioner Santa Cruz and Supervisory MDPS troopers as set forth in this Complaint.

57. Defendants have acted with deliberate indifference to the Fourth Amendment rights of Plaintiffs.  As direct and proximate result of their acts and omissions, Defendants have violated Plaintiffs' Fourth Amendment rights.

58. The Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, and searches.

59. Defendants have, by the actions described above, deprived Plaintiffs of their right to be free from unlawful stops, detentions, and searches. As a result of these deprivations, Plaintiffs continue to suffer harm in violation of their rights under the Fourth and Fourteenth Amendments, and 42 U.S.C. §1983.

**Count 2**

**Cause of Action Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

60. Plaintiffs incorporate by reference paragraphs 1-59 of the Complaint.

61. Defendants have implemented and enforced a policy, practice and/or custom of stopping motor vehicles, detaining drivers and passengers, and searching their cars based on their race and/or national origin in violation of the Equal Protection Clause of the Fourteenth Amendment.

62. These constitutional violations are directly and proximately caused by policies, practices and/or customs of the Commissioner Santa Cruz, as set forth in this Complaint.

63. Defendants have acted with the intent to discriminate on the basis of race in police practices relating to motor vehicle stops, detentions, and searches. As a direct and proximate result of their acts and omissions, Defendants have violated Plaintiffs' Fourteenth Amendment rights.

64. Defendants have intentionally targeted Black and Latino individuals for unconstitutional stops, detentions and searches in Mississippi.  Plaintiffs travel to visit family in DeSoto County, and would like to feel safe returning to the Jackson area so that Ms. Stout can continue her doctoral research. Under these practices, policies and/or customs, Defendants will continue to violate Plaintiffs' Equal Protection rights.

65. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, and searches.

66. Defendants have, by the actions described above, deprived Plaintiffs of their rights to be free from unlawful seizures, searches and detention. As a result, Plaintiffs have suffered and will continue to suffer harm in violation of their rights under the Fourth and Fourteenth Amendments, and 42 U.S.C. §1983.

### Count 3

### Cause of Action Pursuant To Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), *et seq.*, against Commissioner Santa Cruz, representing the Mississippi Department of Public Safety.

67. Plaintiffs incorporate by reference paragraphs 1-66 of the Complaint.

68. The law enforcement activities described in this Complaint have been funded, in part, with federal funds.

69. Discrimination based on race in the law enforcement activities and conduct described in this Complaint is prohibited under 42 U.S.C. § 2000(d), *et seq.* By their acts, conduct and omissions, Defendants intended to discriminate against motorists on the basis of race and/or national origin, and/or their actions had a disparate impact on minorities, particularly Blacks and Latinos.

70. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of unconstitutional stops, detentions, and searches.

71. As a direct and proximate result of the above actions and conduct, Defendants have deprived Plaintiffs of their rights under civil rights statutes and the Constitution of the United States, and in particular Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), *et seq.*

17

**Count 4**

**Cause of Action Pursuant to 42 U.S.C. § 1983 Against All Defendants for Violations**

**of the First and Fourteenth Amendments to the United States Constitution**

72. Plaintiffs incorporate by reference paragraphs 1-71 of the Complaint.

73. The Mississippi Department of Public Safety, Unknown Trooper #1, Staff Sergeant Vincent and Unknown Trooper #2 have implemented and enforced a policy, practice, and/or custom of prohibiting the use of video recording to document the activities of MDPS Troopers while acting in the performance of their duties in a public place in violation of the First and Fourteenth Amendments.

74. Defendants required Plaintiff Stout to stop recording the actions of Troopers while acting in the course of their duties in a public place in violation of the First and Fourteenth Amendments.

75. As a direct and proximate result of such acts, Defendants have deprived Plaintiff Stout of her rights under the First and Fourteenth Amendments, in violation of 42 U.S.C. §1983.

76. As a direct and proximate result of this constitutional abuse, Plaintiff Stout has suffered humiliation, physical and emotional pain and suffering, impediment to her ability to conduct research, a chilling effect on her exercise of protected First Amendment activities and violations of her civil rights. The constitutional violations suffered by Plaintiff Stout are directly and proximately caused by policies, practices and/or customs implemented and enforced by Commissioner Santa Cruz and Defendant Troopers as set forth in this Complaint.

18

77. Defendants have acted with willfully, wantonly, and with deliberate indifference to the First Amendment rights of Plaintiff Stout. As a direct and proximate result of their acts and omissions, Defendants violated Ms. Stout's First Amendment rights.

78. Plaintiff Stout has no adequate remedy at law and will suffer serious and irreparable harm to her constitutional rights unless Defendants are enjoined from continuing their policy, practice and/or custom of prohibiting the use of recordings to document the activities of law enforcement engaged in their duties in a public place.

79. Defendants have, by the actions described above, deprived Plaintiff Stout of her right to be free from prohibition of protected First Amendment activity. As a result, she continues to suffer harm in violation of her rights under the Fourth and Fourteenth Amendments, and 42 U.S.C. §1983.

## JURY DEMAND

80. Plaintiffs request a jury trial as to all Defendants and all counts of the Complaint.

## PRAYER FOR RELIEF

81. Wherefore, the Plaintiffs respectfully request that the Court:

82. Issue judgment declaring that Defendants' policy, practice and/or custom of unjustified stops, detentions and motor vehicle searches in this Complaint violates the Fourth and Fourteenth Amendments to the United States Constitution and Title VI.

83. Issue an order for the following injunctive relief:

    a. Enjoin the Defendants from continuing their policy, practice and/or custom of stops, searches and detentions without probable cause or reasonable suspicion;

    b. Enjoin the Defendants from continuing their policy, practice and/or custom of conducting stops and detentions and searches based on racial profiling;

c.  Require MDPS to institute and implement training, supervision and discipline that will eliminate the policy, practice and/or custom of unconstitutional stops, searches and detentions;

d.  Require MDPS to monitor and audit stop, frisk, search, and detention practices of the MDPS to ensure that stops, searches, and detentions comport with constitutional requirements.

84. Issue judgment declaring that the Defendants' policy, practice and/or custom of prohibiting the use of cameras to document the activities of troopers engaged in their official duties in a public place violates the First Amendment to the United States Constitution and issue an order for the following injunctive relief :

a.  Enjoin the Defendants from continuing their policy, practice, and/or custom prohibiting protected First Amendment activity, including using cameras to document the activities of troopers engaged in their official duties in a public place;

b.  Require MDPS to institute and implement training, supervision, and discipline that will eliminate the policy, practice, and/or custom of prohibiting protected First Amendment activity, including using cameras to document the activities of troopers engaged in their official duties in a public place;

c.  Require MDPS to implement policies and procedures that will ensure civilians can file a meaningful complaint with the Department;

85. Award Plaintiffs compensatory damages against all Defendants;

86. Award Plaintiffs punitive damages against the Troopers named in their individual capacities;

87. Award Plaintiffs reasonable attorneys' fees pursuant to 42 U.S.C. §1988;

88. Award Plaintiffs costs of litigation pursuant to 42 U.S.C. §§1920 and 1988; and

89. Award such other and further relief as this Court may deem appropriate and just and in

the interests of justice.

THIS the 13th day of December, 2013.

Respectfully submitted,

Cathryn Stout and Raymond Montgomery, Jr.,
PLAINTIFFS

Bear H. Atwood (MSB# 103234)
Attorney for Plaintiffs

OF COUNSEL:

Bear H. Atwood (MSB# 103234)
American Civil Liberties Union of MS
223 East Capitol Street
P.O. Box 2242
Jackson, MS 39225-2242